# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**RALPH EUGENE MCINNIS**                                                                                              **PLAINTIFF**

**VS.**                                                                                          **CIVIL ACTION NO. 1:08cv680-JMR**

**KEN BROADUS, JAMES ALBIN,**
**and BLAKE TAPPER**                                                                                              **DEFENDANTS**

_____

## MEMORANDUM OPINION:

This matter is before the Court pursuant to a Motion [39-1] for Partial Summary Judgement filed on behalf of the Defendants, Ken Broadus, Director of the Jackson County Adult Detention Center; James Albin; and Blake Tapper (collectively hereinafter "Defendants"). Defendants' Motion is accompanied by a Memorandum [40-1] in Support thereof. To date, Plaintiff has not filed a Response in Opposition. The Court being fully advised in the premises, and after carefully considering the pleadings filed as a matter of record, along with the applicable law, finds that Defendants' Motion for Partial Summary Judgement should be granted. Accordingly, all official capacity claims against Defendants should be dismissed with prejudice. A bench trial on Plaintiff's individual capacity claims is presently scheduled to proceed on February 8, 2010.

## FACTS:

Plaintiff, Ralph McInnis, was arrested by the Jackson County Sheriff's Department and charged with simple assault on a police officer and shoplifting. On October 22, 2007, Plaintiff was booked into the Jackson Count Adult Detention Center ("JCADC") to await trial on the pending charges. On September 26, 2008, Plaintiff, filed this *pro se* § 1983 action against Ken Broadus, Director of the JCADC; James Albin, Deputy at the JCADC; and Blake Tapper, former Deputy at the JCADC, and alleges that he suffered violations of his civil rights while being held as a pretrial

detainee in the JCADC.

In his Complaint, Plaintiff alleges that he was kicked, beaten, and tased by Defendants Albin and Tapper on August 27, 2008. Furthermore, Plaintiff claims that Defendant Broadus, in his official capacity as director of the JCADC, did not properly train Defendant Albin and Defendant Tapper. (*See* Pl.'s Compl. [1-1] 9.) The Court emphasizes that only Plaintiff's official capacity claims are addressed by Defendants' Motion [39-1] for Partial Summary Judgment. Plaintiff's individual capacity claims are not presently before the Court. Also, the Court points out that trial in this cause is set for February 8, 2010.

The Court notes that Plaintiff does not specify whether his claims are against Defendants Albin and Tapper in their individual capacities, their official capacities, or both. Because *pro se* complaints must be construed liberally, the Court will interpret Plaintiff's Complaint to allege claims against Defendants Albin and Tapper in both their individual and official capacities. *See Williams v. Love,* 2006 WL 1581908, *5 (S.D.Tex. 2006). Furthermore, the Court notes that the only individual capacity claims that could be gleaned from Plaintiff's Complaint are excessive force claims against Defendants Albin and Tapper.

## STANDARD OF REVIEW:

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-97 (5th Cir. 1987). "The requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Furthermore, it is well settled in this circuit that "[b]are bones allegations are insufficient to withstand summary judgment because the opposing party must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (*quoting Nicholas Acoustics Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839, 845 (5th Cir. 1983)).

In considering a motion for summary judgment, the trial court views the evidence in the light most favorable to the party resisting the motion. *See Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986). To survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of material fact. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). To avoid the entry of summary judgment, the non-moving party must bring forth significant probative evidence demonstrating the existence of a triable issue of fact. *See Howard*, 783 F.2d at 1315.

42 U.S.C. § 1983 imposes liability upon any person who, acting under the color of state law, deprives another of federally protected rights. Therefore, section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the Laws of the United States. *White v. Thomas*, 660 F. 2d 680, 693 (5th Cir. 1981). A plaintiff cannot succeed merely by showing any deprivation of his rights. Section 1983 was intended to protect rights protected by federal law. *Karmi-Panahi v. Los Angles Police Dept.*, 839 F. 2d 621 (9th Cir. 1988); *Wright v. Collins*, 766 F.2d 841 (5th Cir. 1985).

### **APPLICABLE LAW:**

In their Motion [39-1] for Partial Summary Judgment, Defendants contend that Plaintiff's

official capacity claims against them are, in reality, claims against Jackson County. Thus, Plaintiff must demonstrate that his claims are actionable under the United States Supreme Court's jurisprudence regarding municipal liability under section 1983.

Under 42 U.S.C. § 1983, liability may be imposed upon any person who, acting under the color of state law, deprives another of federally protected rights. It neither provides a general remedy for the alleged tort of state officials, nor opens the federal courthouse doors to relieve complaints of all who suffer injury at the hands of the state or its officers. Municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978). *Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such reading. *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691.

A suit against a governmental agent or officer in his official capacity is a suit against the office that the employee holds and not against the actual employee. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The three requirements for municipal liability outlined in *Piotrowski* are necessary in order to distinguish between individual violations by local employees and those that can be fairly attributed to conduct by the governmental entity itself. *See Piotrowski*, 237 F.3d at 578-79. The United States Supreme Court has clearly emphasized the necessity of an official policy as a predicate to recovery under a theory of municipal liability:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its

> lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 695. Therefore, municipalities may not be held liable for acts of lower level employees, but may be held liable for constitutional violations committed pursuant to an official policy or custom. *Piotrowski*, 237 F.3d at 578.

In addition, not only must the plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. *Id.* at 580; *See Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002) ("[T]he municipality must maintain its official policy with deliberate indifference to a constitutionally protected right."). Deliberate indifference is an objective standard which encompasses "not only what the policymaker actually knew but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Lawson*, 286 F.3d at 264. The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. *Peters v. City of Biloxi*, 57 F.Supp. 2d 366, 376 (S.D. Miss. 1999). *See Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Piotrowski*, 237 F.3d at 580 (Stating that these two requirements "must not be diluted").

## ANALYSIS:

As a pretrial detainee, Plaintiff's constitutional rights flow from the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Because they have not yet been convicted of the crime with which they are charged,

pretrial detainees have a due process right not to be punished for that crime. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979). The Supreme Court has stated the distinction between conditions that may be constitutionally imposed on convicted prisoners and conditions that may be imposed on pretrial detainees as follows:

> [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. **Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.**

*Ingraham v. Wright,* 430 U.S. 651, 671-72 (1977) (emphasis added).

The appropriate standard to apply in analyzing constitutional challenges by pretrial detainees depends on whether the alleged unconstitutional conduct is a "condition of confinement"[1] or "episodic act or omission." *See Scott v. Moore,* 114 F.3d 51, 53 (5th Cir.1997) (en banc). The Fourteenth Amendment protects pretrial detainees from the imposition of conditions of confinement that constitute "punishment." *Hamilton v. Lyons,* 74 F.3d 99, 103 (5th Cir.1996). "Punishment" may be loosely defined as "a restriction or condition that is not reasonably related to a legitimate goal-if it is arbitrary or purposeless" *Bell*, 441 U.S. at 539. "Reasonably related" means that the restriction is (1) rationally related to a legitimate governmental purpose, and (2) not excessive in relation to that purpose. *Id.* at 561. "[T]his test is deferential to jail rulemaking; it is in essence a rational basis test

---

[1] The following were deemed to be conditions-of-confinement cases: *Murphy v. Walker,* 51 F.3d 714 (7th Cir.1995) (revocation of telephone, television, and cigarette privileges); *Collazo-Leon v. United States Bureau of Prisons,* 51 F.3d 315 (1st Cir.1995) (disciplinary segregation and denial of telephone and visitation privileges); *United States v. Millan,* 4 F.3d 1038 (2d Cir.1993) (length of pre-trial detention); *Hause v. Vaught,* 993 F.2d 1079 (4th Cir.1993) (restriction on mail privileges); *Brogsdale v. Barry,* 926 F.2d 1184 (D.C.Cir.1991) (overcrowding); *Lyons v. Powell,* 838 F.2d 28 (1st Cir.1988) (22-23-hour confinement and placement of mattress on floor); *Fredericks v. Huggins,* 711 F.2d 31 (4th Cir.1983) (policy of refusing detainees access to drugs for rehabilitation); *Lareau v. Manson,* 651 F.2d 96 (2d Cir.1981) (overcrowding).

of the validity of jail rules." *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 646 (5th Cir.1996).

When a pre-trial detainee alleges unconstitutional conduct which involves an episodic act or omission, the question is whether the state official acted with deliberate indifference to the inmate's constitutional rights. *Gibbs v. Grimmette,* 254 F.3d 545, 548 (5th Cir. 2001). When the alleged constitutional violation is a particular act or omission by an individual that points to a derivative policy or custom of the municipality, the deliberate indifference standard is appropriate. *Scott,* 114 F.3d at 53-54. To prove deliberate indifference, a pretrial detainee must show that the state official knew of and disregarded an excessive risk to the inmate's health or safety. *See Stewart v. Murphy,* 174 F.3d 530, 534 (5th Cir.1999). The Court notes that Plaintiff's Complaint alleges only unconstitutional episodic acts or omissions. Therefore, the Court need only address the one category of allegations.

A. Excessive Force

Plaintiff's Complaint makes an allegation regarding an incident of violence involving Defendant Albin and Defendant Tapper, deputies at the JCADC. Specifically, Plaintiff alleges that on August 27, 2008, he was kicked, beaten, and tased by Defendants Albin and Tapper. The Plaintiff asserts that on August 27, 2008 he was standing in line for headcount when he was questioned about the placement of his hands by an Officer Tillman. (*See* Pl.'s Compl. [1-1] 6.) Plaintiff alleges that Officer Tillman was not satisfied with his answers, and thus ordered Plaintiff to sit down and take off his shoes. *Id.* Plaintiff then claims Defendant Albin escorted him to BE (a/k/a B-Boy) where they met Defendant Tapper. *Id.* Upon arriving in BE, Plaintiff asserts he was directed by Defendant Albin to strip, "bend over and spread [his] butt apart." *Id.* Plaintiff claims that he informed Defendants Albin and Tapper that he could not comply. *Id.* Plaintiff asserts that Defendant Albin and Defendant Tapper then began to beat him by hitting him in the face and head, kneeing him, and taseing him for

about five (5) minutes. *Id.* Plaintiff asserts that the beating stopped when two other officers arrived. *Id.* As noted earlier, only Plaintiff's official capacity claims are presently before the Court.

Plaintiff's official capacity claims against Defendants Albin and Tapper are, in reality, claims against the office which they occupied at the time of the alleged incident and, ultimately, Jackson County. Therefore, to the extent Plaintiff brings this action against Defendants Albin and Tapper in their official capacities, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability: that the JCADC had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the JCADC's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

Other than the above allegation of an incident of allegedly unconstitutional conduct, Plaintiff presents no evidence that an official policy of the JCADC existed which violated his constitutional rights. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. Plaintiff has presented no evidence that Defendant Broadus, Director of the JCADC, was involved in the alleged assault against him or was even aware it had occurred. At best, Plaintiff's assertions amount to an isolated incident of negligent conduct, which, by itself, is insufficient to support the instant official capacity claim against the Defendants, and ultimately Jackson County.

B. Failure to Properly Train

Plaintiff also alleges that Ken Broadus, "in his official capacity as director and major of the Jackson County A.D.C.," neglected to properly train Defendant Albin and Defendant Tapper in the correct procedure concerning physical contact with inmates. (*See* Pl.'s Compl. [1-1] 9.)

"Supervisory officers cannot be held liable under Section 1983 for the actions of subordinates on any theory of vicarious liability." *Hampton v. Oktibbeha County Sheriff Dept.*, 480 F.3d 358, 367 (5th Cir. 2007) (quoting *Thibodeaux v. Arceneaux*, 768 F.2d 737, 739 (5th Cir. 1985)). Instead, counties and supervisors are liable for the constitutional violations committed by county employees only when those violations result directly from a municipal custom or policy. *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000). A municipality's failure to properly train or supervise its employees can be a policy or custom giving rise to § 1983 liability. *See City of Canton, Ohio v. Harris,* 489 U.S. 387, 387 (1988). Therefore, Plaintiff must prove that: (1) the training procedures of the municipality's policymaker were inadequate; (2) the municipality's policymaker was deliberately indifferent in adopting the training policy, and (3) the inadequate training policy directly caused the constitutional deprivation. *See Baker v. Putnal,* 75 F.3d 190, 200 (5th Cir.1996). Finally, "[t]he description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Tex. City, Police Dept.*, 103 F.3d 162, 167 (5th Cir. 1997).

While Plaintiff has alleged a violation of his constitutional rights, that fact alone will not permit recovery in an official capacity claim predicated on inadequate training or supervision. Plaintiff must first prove a constitutional violation and then further prove the constitutional violation occurred because Defendants failed to train or supervise their employees, and that the inadequate training was the result of an official custom or policy of the JCADC. Plaintiff has only made an allegation of a constitutional violation, that he was subjected to excessive force at the hands of JCADC officers, and an allegation of failure to train these officers. In support of his allegation that Defendants Albin and Tapper were not properly trained, Plaintiff submits a response from Defendant Broadus to a grievance presumably submitted by Plaintiff concerning the incident on August 27,

2008. Defendant Broadus, in the response, stated as follows:

> Your complaint was looked in to [sic]. There is information about your demeanor and language that you did not include in your complaint. The issue of your arm injury has been addressed. Do not curse an ADC staff. If given a direct order, comply. The Officers were following protocol when the incident in BE occurred.

(*See* Ex. "A" Attach. Pl.'s Compl. [1-1]) Plaintiff claims that Defendant Broadus admitted it was protocol to use excessive force.

In response, Defendants argue that there was sufficient training for its employees at the JCADC. First, the Defendants argue that the JCADC has an appropriate, written use-of-force policy and an appropriate, written strip search policy. (*See* Exs. "2A," "2B" Attach. Mot. [39-4] Summ J.) Additionally, Defendants assert that Defendant Albin and Defendant Tapper received sufficient training and instruction as correctional officers. (*See* Ex. "2" Attach. Mot. [39-4] Summ. J.) In support, Defendants have submitted numerous training certificates that both Defendant Albin and Defendant Tapper have received prior to the incident with Plaintiff. Defendant Albin has received a certificate acknowledging training in Oleoresin Capsicum spray, Surviving Edged Weapons, Less Than Lethal Specialty Impact Munitions, Semi-Auto Pistol Transition, Chemical Weapons Spray, Course Completion as Correctional Officer, and Officer Safety and Use of Force: Legal and Operational Issues. (*See* Ex. "2D" Attach. Mot. [39-5] Summ. J.) Defendant Tapper has received certificates acknowledging training in Adult Detention Officer Certification, Training for Oleoresin Capsicum spray, Professional Certificate from Board on Jail Officer Standards and Training, and a memorandum of understanding of the Jackson County Sheriff's Department Standard Operating Procedure Manual. (*See* Ex. "2C" Attach. Mot. [39-5] Summ. J.)

Ordinarily, to impose liability for failure to train, "the [plaintiff's] focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform."

*Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). In particular, there must be specific allegations as to how a particular training program is defective. *Id.* While Plaintiff makes an allegation that he suffered abuse at the hands of JCADC Deputies, he makes no specific allegations as to how the training and supervision program at the JCADC was inadequate or defective. For instance, Plaintiff asserts that Defendant Broadus "knowingly neglected and ignored properly training officers: James R. Albin and Baker Tapper..." (*See* Pl.'s Compl. 9.) However, Plaintiff fails to elaborate on this statement and presents no specific allegations as to how the JCADC's policies noted above are inappropriate.

In response, the Defendants provided evidence that all JCADC employees receive extensive training and are required to adhere to the facility's official use-of-force and strip search policies. Plaintiff fails to present any evidence to contradict the Defendants' assertions that the training of JCADC was adequate. Instead, Plaintiff contends that the incident on August 27, 2008 proves that the JCADC's supervision and training were inadequate. The Court notes that Plaintiff has failed to provide any evidence of any inmates being abused on or prior to August 27, 2008.

In addition to proving that Defendants inadequately trained the JCADC employees, Plaintiff is required to prove that the inadequate training resulted directly from a municipal custom or policy. *See Conner*, 209 F.3d at 796. However, Plaintiff presents no evidence of an official JCADC policy that caused the allegedly inadequate training of the facility's employees. The Court finds that Plaintiff's bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation.

Based on the evidence of record, the Court finds that Plaintiff has failed to prove the existence of a genuine issue as to whether there existed an official policy or custom of inadequately training the employees of the JCADC.

Assuming, *arguendo*, that Plaintiff could prove the existence of an official policy that resulted in inadequate training or supervision, the Court finds that Defendants would still be entitled to summary judgment as to Plaintiff's official capacity claims because he cannot prove that the Defendants' failure to adequately train or supervise amounted to deliberate indifference. "Deliberate indifference . . . [requires] proof that a municipal actor disregarded a known or obvious consequence of his action." *Estate of Davis ex rel McCully*, 406 F.3d at 381. To establish deliberate indifference, a plaintiff must prove that a defendant acted with more than negligence or even gross negligence. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Furthermore, a plaintiff must ordinarily demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and likely to result in a constitutional violation.'" *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (quoting *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001).

Plaintiff's conclusory allegation is legally insufficient to establish that Jackson County was aware that the training and supervision of the JCADC employees was inadequate and likely to result in a constitutional violations. The Court finds that, absent some evidence of a pattern of prior violations, Plaintiff has failed to prove that Defendants were aware that he faced a substantial risk of harm.

Based on the foregoing analysis, the Court finds that Plaintiff's Complaint fails to establish that a policy or custom on the part of the JCADC was the moving force behind any alleged constitutional violations. Furthermore, this Court finds that Plaintiff's allegations do not indicate that he faced a substantial risk of serious harm to which Jackson County responded with deliberate indifference. Thus, there exists no basis for Plaintiff's claims against the Defendants in their official capacities.

The Court also finds that to the extent Plaintiffs' complaint could be construed to allege

claims under state law, they are barred by provisions contained in the Mississippi Tort Claims Act, MISS. CODE ANN. § 11-46-1, *et seq*. Specifically, the Act provides that a government subdivision shall not be liable for a claim "of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary, or other such institution regardless of whether such claimant is or is not an inmate . . . when the claim is filed." MISS. CODE ANN. § 11-46-9(1)(m). The Court finds that because Plaintiff was an inmate at the time these events allegedly occurred, any claims arising under Mississippi law as a result of these alleged events are barred by the above provision.

## **CONCLUSION:**

Based on the preceding analysis, this Court is of the opinion that Plaintiff has failed to meet his burden of demonstrating any genuine issues of material fact which would preclude summary judgment on his official capacity section 1983 claims against the Defendants. Therefore, this Court finds the Defendants' Motion [39-1] for Partial Summary Judgement should be granted, and that all official capacity claims against the Defendants should be dismissed with prejudice. The Court notes that trial in this matter concerning Plaintiff's individual capacity claims is presently scheduled to proceed on February 8, 2010.

**SO ORDERED AND ADJUDGED**, this the ___20th___ day of January, 2010.

_s/ John M. Roper, Sr._
CHIEF UNITED STATES MAGISTRATE JUDGE